**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ELIZABETH ADDEO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| PETE BUTTIGIEG, | ) | **JURY TRIAL DEMANDED** |
| Secretary of Transportation, | ) | |
| U.S. Department of Transportation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Elizabeth Addeo submits the following Complaint for Damages and Equitable Relief against Defendant Pete Buttigieg, Secretary of Transportation, U.S. Department of Transportation, showing the Court as follows:

## PARTIES

1.

Plaintiff Elizabeth Addeo, a female over the age of forty, is an Operations Officer with the Federal Aviation Administration (FAA), U.S. Department of Transportation (DOT) ("the Agency"). Between May 2018 and April 2021, Ms. Addeo was a permanent employee with the FAA, Southern Regional Office located in College Park, Georgia.

2.

At all times relevant to this action, the Federal Aviation Administration, U.S. Department of Transportation, Pete Buttigieg, Secretary, was Plaintiff's employer pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*. (Title VII).

3.

The United States may be served with a summons and copy of the Complaint in this action by certified mail to the civil-process clerk at the United States attorney's office for the district where this action is brought at the Richard B. Russell Federal Building, 75 Ted Turner Dr. SW, Suite 600, Atlanta, GA 30303-3309 and the Attorney General of the United States, Merrick B. Garland, at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

4.

Defendant may be served with a summons and copy of the Complaint in this action by certified mail to The Honorable Pete Buttigieg, Secretary of Transportation at 1200 New Jersey Avenue, S.E., Washington, DC 20590.

5.

Plaintiff shall furnish a copy of the Complaint to the Departmental Office of Civil Rights via electronic mail to [DOCR-EEOC-HearingandAppealCorrespondence@dot.gov](mailto:DOCR-EEOC-HearingandAppealCorrespondence@dot.gov), Attn: Associate Director, EEO Complaints and Investigations Division (S-34), Departmental Office of Civil Rights, U.S. Department of Transportation.

6.

Plaintiff shall furnish a copy of the Complaint to the Agency via certified mail to the Employment and Labor Law Division, AGC-100, The Office of the Chief Counsel, Federal Aviation Administration (FAA), U.S. Department of Transportation, 800 Independence Avenue S.W., Washington, DC 20591.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.

On October 23, 2020, Plaintiff timely filed a Formal Complaint of Discrimination with the Agency's Office of Civil Rights alleging violations of Title VII. Plaintiff received the Agency's final agency decision (FAD) regarding her Formal Complaint of Discrimination within the last ninety days. Plaintiff has complied with all other conditions precedent to the institution of this lawsuit.

## JURISDICTION AND VENUE

8.

3

This Court has jurisdiction in this action pursuant to 28 U.S.C. Sections 1331, 1343, and 1346.

9.

Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

## FACTUAL ALLEGATIONS

10.

Ms. Addeo's employment with the Agency began in 2009.

11.

Ms. Addeo began working as an Operations Officer at the Agency's Southern Regional Office located in College Park, Georgia, in May 2018.

12.

During her shifts, Ms. Addeo typically worked in the Regional Operations Center (ROC) with other Operations Officers, including Agency employee Steve Nelson.

13.

Ms. Addeo did not communicate with Mr. Nelson outside of the workplace;

however, the two occasionally spoke at work about inconsequential topics, such as their families, pets, and previous work history.

14.

On February 28, 2020, at approximately 1:22 a.m, Ms. Addeo received thirty-two text messages on her personal cell phone from Mr. Nelson.

15.

Most of the messages were pictures of Mr. Nelson's dog, his house, and their work schedule.

16.

However, Ms. Addeo was shocked that Mr. Nelson also sent a vulgar video of himself naked from the waist down.

17.

In the video, Mr. Nelson bent over, put his hand in his anus, took out an object, turned around to face the camera, and then put the object into his mouth.

18.

Mr. Nelson recorded the initial explicit video he sent her while working at the ROC, and was wearing the Personal Identity Verification lanyard around his neck.

19.

When Ms. Addeo viewed the video, she felt sick and disgusted.

20.

Mr. Nelson sent a follow-up message saying, "Whoa!, I'm not sure what the heck happened . . . maybe I pressed up against my phone or there is something wrong with it. Either way I did not mean to send you all those images. Please disregard them! I sincerely apologize for the bother . . . I hope I did not wake you up!"

21.

During the next shift that Mr. Nelson and Ms. Addeo worked together, about two weeks later, Mr. Nelson approached Ms. Addeo.

22.

Standing in front of Ms. Addeo's desk, Mr. Nelson said, "I'm really so sorry. I don't know how it happened. I really do owe you a dinner."

23.

Ms. Addeo replied, "Don't worry about it" and that dinner was not necessary.

24.

Mr. Nelson continued repeating his apology and offering her dinner, and Ms. Addeo continued to reply that dinner was not necessary.

25.

This exchange lasted for about five to six minutes until Mr. Nelson relented and finally left Ms. Addeo's desk.

26.

The only reason Mr. Nelson had Ms. Addeo's personal phone number was because the two were in a work-related group chat, and they had previously only exchanged text messages about work-related matters.

27.

On July 28, 2020, Ms. Addeo received notifications on her personal cellphone at around 12:17 p.m. and 4:33 p.m. that she had received two messages from Mr. Nelson on her Facebook Messenger account.

28.

When Ms. Addeo eventually checked the messages, she could not view them because Mr. Nelson had removed them.

29.

Mr. Nelson again apologized for the videos, saying he did not know why they were being sent.

30.

Because of the previous incident and Mr. Nelson's nearly identical apology,

Ms. Addeo was concerned about the deleted videos' content.

31.

On August 11, 2020, at 12:16 p.m., Ms. Addeo received an explicit seven-minute video from Mr. Nelson on Facebook Messenger.

32.

The video was a graphic, disturbing recording of Mr. Nelson naked with a woman in bed, engaging in bondage sex.

33.

In the video, the woman uses a strap-on dildo to penetrate Mr. Nelson anally and orally, among other lewd acts.

34.

The video, which bears an "FVF" watermark, features two camera angles, and film lighting equipment can be seen in the background.

35.

The video starts with pink text scrolling across stating that, "$lutboy Steve came to be humiliated, degraded, used and treated like a cocksucking whore! What's worse is he wants everyone to know it!"

36.

Predictably, this video was again followed up by two "apology" messages

from Mr. Nelson.

37.

Disturbed by the video, Ms. Addeo reported it to her supervisor, Jennifer Mansour.

38.

Ms. Mansour responded by asking Ms. Addeo, "Steve? Our quiet Steve?"

39.

Ms. Addeo asked Ms. Mansour if she could take administrative leave because she was too emotional and disturbed to go to work.

40.

Initially, Ms. Mansour told Ms. Addeo, "Of course."

41.

Later in the day, however, Ms. Mansour told Ms. Addeo that she could not approve the administrative leave because "It will bring up a red flag in Washington."

42.

Additionally, although Ms. Mansour initially agreed to meet with Ms. Addeo the next day to discuss the matter, she canceled the meeting the next day because she did not want to see the videos.

10

43.

Ms. Addeo later learned that Gene Morrison, an Investigative Agent, was assigned to investigate her complaint.

44.

Ms. Addeo realized that Mr. Nelson was also the sick individual responsible for urinating on her belongings at work.

45.

In May 2020, Ms. Addeo noticed the contents of her locker were wet and smelled like urine.

46.

About two to three weeks later, Ms. Addeo noticed the contents of her locker – including her jacket and blanket – were again wet and smelled like urine.

47.

On or around May 21, 2020, Ms. Addeo reported the incident to Ms. Mansour.

48.

At the time, Ms. Mansour responded by putting locks on all the lockers and telling Ms. Addeo, "That's really weird."

49.

On August 28, 2020, Ms. Addeo realized that Mr. Nelson recorded the initial explicit video he sent her while working at the ROC, because he was wearing the Personal Identity Verification lanyard around his neck, and she recognized the carpet, windows, and the four-month government calendar mounted on the wall.

50.

Ms. Addeo called Mr. Morrison to update her statement, and Mr. Morrison made Ms. Mansour watch the video to confirm that Mr. Nelson recorded himself performing sexually deviant acts in their shared workspace.

51.

Ms. Mansour confirmed that it was true Mr. Nelson had recorded the video at the College Park ROC.

52.

Later, Ms. Mansour approached Ms. Addeo to discuss the video, even though she knew how disturbed Ms. Addeo was by it.

53.

Ms. Mansour asked whether Ms. Addeo had searched for the website included in Mr. Nelson's bondage video because she would "see how sick this guy is and what he is into."

54.

Ms. Addeo responded that she did not look up the website because she already knew Mr. Nelson was disturbed.

55.

Ms. Addeo felt that Ms. Mansour asked her to view more graphic material that Mr. Nelson had produced, even though she knew how much the previous videos had left Ms. Addeo emotionally distressed.

56.

Four more bondage videos of Mr. Nelson with "Fontaine" can be purchased at the following website: https://www.clips4sale.com/studio/69821/mistress-fontaine-s-store/Cat0-AllCategories/Page1/DisplayOrder-asc/Limit100/.

57.

Ms. Mansour later told Ms. Addeo that she "kind of believe[d]" Mr. Nelson sent the videos by accident.

58.

Around September 2020, Ms. Addeo learned that Mr. Nelson was being afforded the opportunity to telework.

59.

Ms. Addeo spoke to Ms. Mansour and requested that she also be allowed to

telework instead of being forced to take unpaid leave.

60.

Ms. Mansour denied Ms. Addeo's request outright, telling Ms. Addeo that there was not enough work for both she and Mr. Nelson to telework.

61.

Ms. Addeo was denied administrative leave and was forced to use all her unpaid sick leave when she took time off to deal with the emotional trauma of these incidents.

62.

Despite all this egregious and unlawful conduct, Mr. Nelson was allowed work at the College Park ROC until his termination on or about November 2, 2020.

63.

Based on information and belief, Mr. Nelson previously engaged in similar conduct in 2017 when he sent a female coworker sexually graphic material while working at an FAA facility in Kenai, Alaska.

64.

Based on information and belief, Mr. Nelson was instructed to write an apology letter.

65.

There was no record in the Office of Investigations database which indicated that they had officially investigated the incident.

66.

Soon after that incident, Mr. Nelson was transferred to the College Park ROC in 2018.

67.

The Atlanta Personnel Security Branch, FAA, approved Mr. Nelson for security clearance even though the 2017 Alaska incident was in his personnel security file.

## COUNT I
## DISPARATE TREATMENT ON THE BASIS OF SEX IN VIOLATION OF TITLE VII

68.

Plaintiff incorporates all the preceding paragraphs of this Complaint by reference as if they were fully set forth herein.

69.

Plaintiff was subjected to disparate treatment based on her sex by Mr. Nelson, for which Defendant is liable as Mr. Nelson's employer.

70.

Defendant subjected Plaintiff to disparate treatment when it, *inter alia,* subjected her to a sexually hostile environment and discriminatory sex-based communications and actions.

71.

Defendant subjected Plaintiff to disparate treatment when it, *inter alia,* subjected her to a sexually hostile environment and discriminatory sex-based communications and actions, as well as denying her the opportunity to telework while granting the same to her male harasser (Mr. Nelson) and denying her administrative leave, thereby forcing her to use all her unpaid sick leave.

72.

Defendant subjected Plaintiff to disparate treatment because of her sex compared to her similarly situated male counterparts.

73.

The above-pled actions of Defendant constitute sex discrimination in violation of Title VII.

74.

Plaintiff's sex was a motivating factor in Defendant's decisions to take the above-pled discriminatory actions, even if her sex was not the only factor that

motivated those decisions.

75.

The actions of Defendant in subjecting Plaintiff to disparate treatment were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

76.

As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages, including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

77.

As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover lost wages, lost benefits, compensatory damages for emotional distress, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT II
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

78.

Plaintiff incorporates all the preceding paragraphs of this Complaint by reference as if they were fully set forth herein.

17

79.

Plaintiff was subjected to a hostile work environment by Mr. Nelson, for which Defendant is liable as Mr. Nelson's employer.

80.

As outlined above, Plaintiff was subjected to severe and pervasive sexual communications and actions by Mr. Nelson.

81.

On several occasions and during her employment with Defendant, Plaintiff reported Mr. Nelson's inappropriate conduct as outlined above to Ms. Mansour and Mr. Morrison.

82.

At all times relevant to this action, Defendant knew or should have known of Mr. Nelson's propensity for sexual harassment and sexual harassment of Plaintiff and the existence of a sexually hostile work environment but failed to take remedial action to prevent or correct the harassment or protect Plaintiff.

83.

Defendant knew of Mr. Nelson's propensity for sexual harassment and failed to exercise reasonable care to prevent and then promptly correct the harassing behavior after Plaintiff reported Mr. Nelson's harassment.

84.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

85.

As the result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, humiliation, and other indignities.

86.

As a result of Defendant's violations of Title VII, Plaintiff is entitled to recover any lost wages, lost benefits, compensatory and punitive damages, and reasonable attorneys' fees and costs, as well as equitable and injunctive relief.

## **COUNT III**
## **RETALIATION IN VIOLATION OF TITLE VII**

87.

Plaintiff incorporates all the preceding paragraphs of this Complaint by reference as if they were fully set forth herein.

88.

Plaintiff engaged in statutorily protected activity by objecting to and complaining against sex discrimination and sexual harassment prohibited by Title VII.

89.

Title VII prohibits Defendant from retaliating against Plaintiff because she opposed, objected to, and complained against sex discrimination and sexual harassment prohibited by Title VII.

90.

Defendant subjected Plaintiff to retaliation because she opposed, objected to, and complained against illegal sex discrimination and sexual harassment by taking various retaliatory actions against her including, but not limited to denying her the opportunity to telework while granting the same to her male harasser (Mr. Nelson) and denying her administrative leave, thereby forcing her to use all her unpaid sick leave.

91.

The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of Title VII.

92.

Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff.

93.

Defendant's actions were reckless and were taken in willful disregard of the

probable consequences of its actions.

94.

As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, humiliation, and other indignities.

95.

Pursuant to Title VII, Plaintiff is entitled to recover any lost wages, lost benefits, compensatory and punitive damages, and reasonable attorneys' fees and costs, as well as equitable and injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.     That this Court take jurisdiction of this matter;

B.     That process be served;

C.     That Plaintiff be awarded a declaratory judgment that Defendant violated Title VII, as described above;

D.     That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices, including unlawful sex discrimination, sexual harassment, and retaliation;

E.      That this Court award Plaintiff her full lost wages and lost benefits;

F.      Prejudgment interest and post-judgment interest;

G.      That this Court award compensatory damages in an amount to be determined by the trier of fact;

H.      That this Court award punitive damages for Defendant's willful violations of the law;

I.      That this Court award Plaintiff her costs in this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and other applicable laws;

J.      That this Court grant Plaintiff the right to have a trial by jury on all issues triable to a jury; and

K.      That this Court grant such additional relief as this Court deems proper and just.

Respectfully submitted this 22nd day of June, 2022.

By:     */s/ Edward D. Buckley*
        Edward D. Buckley
        Georgia Bar No. 092750
        edbuckley@buckleybeal.com
        Alessandra T. Palazzolo
        Georgia Bar No. 485399
        apalazzolo@buckleybeal.com
        **BUCKLEY BEAL LLP**
        600 Peachtree Street NE, Suite 3900
        Atlanta, GA 30308
        Telephone: (404) 781-1100
        Facsimile: (404) 781-1101

*Counsel for Plaintiff*